[Civ. No. 3102. Second Appellate District, Division Two.—March 10, 1921.]

## JOSEPHINE F. TREESH, Respondent, v. D. P. STONE, Appellant.

[1] LANDLORD AND TENANT—LOCKING OF DOOR—DENIAL OF ADMITTANCE TO TENANT—GOOD FAITH—OPPRESSION.—A person conducting a hotel is not guilty of oppression in changing the lock on the door to one of the housekeeping apartments therein during the absence of the person who had been occupying the same and in refusing to allow her to enter the rooms on her return, where he acts in good faith, believing that the relation of landlord and tenant does not exist and that he has the right to resort to that course in order to protect his lien on her personal belongings because of the rents past due, part of which she has refused to pay; neither would he be guilty of oppression in thereafter informing her friends who come to see her that the apartment had been closed, that she no longer lived at the hotel, and that there had been trouble between her and the management.

[2] ID.—WRONGFUL EVICTION—EXEMPLARY DAMAGES—EVIDENCE. — In this action for compensatory and exemplary damages for an alleged wrongful eviction of plaintiff from a hotel conducted by defendant, the evidence failed to justify the findings of the trial court upon which its judgment for exemplary damages was based.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Reversed.

The facts are stated in the opinion of the court.

Stephens & Stephens and Chandler P. Ward for Appellant.

H. C. Millsap for Respondent.

WORKS, J.—This is an appeal by the defendant from a money judgment in favor of the plaintiff. The appellant conducted a hotel and the respondent occupied a housekeeping apartment in the place under an agreement to pay in advance a monthly rental of $30. As a part of the agreement

2. Necessity of actual malice to justify exemplary damages for tort, notes, 28 Am. St. Rep. 870; 16 L. R. A. (N. S.) 440.

under which the apartment was let it was understood that respondent might leave at the desk of the clerk of the hotel such apparel as she desired to have laundered from time to time and that, after it was laundered, it should be returned to her there. On one occasion she left at the desk a parcel for the laundry and it was lost through the fault of the hotel management. This loss occurred in June and, respondent having asserted a claim against appellant for the value of the missing parcel, the matter was left in abeyance, at the request of appellant, pending an attempt to locate it, respondent not paying her rent in the meanwhile. On August 21st appellant notified respondent that the parcel could not be found and on the next day she wrote appellant a note inclosing a list of the articles which had been lost, with an itemized statement of values amounting to $30.25. She also stated her total indebtedness to the hotel for July rent, with certain extras added, at $31.65, and inclosed a check for the balance, $1.40. She also inclosed her check for $30 to cover the rent for August. The note which accompanied these inclosures contained a request for receipts in full for the two months. On August 27th, while respondent was absent from her apartment, appellant changed the lock on her door and refused to allow her to enter her rooms on her return. The present suit was the outcome of this chain of events.

The complaint alleged, in addition to the matters above stated, that the eviction of respondent occurred without notice to her of the rejection of the offer contained in her letter, without a return to her of the checks, without giving her a thirty-day notice terminating her tenancy or a three-day notice to pay rent or vacate; that the eviction was made wantonly, willfully, and maliciously and with intent to compel respondent to pay appellant more than was due him; that appellant advised respondent's friends who came to call upon her that the apartment had been closed and that respondent no longer resided in the hotel; that on September 4th, in order to get possession of her property and to avoid further humiliation and annoyance, respondent was forced to and did pay to appellant the sum of $65.30, which included rental to September 1st; and that, by reason of the acts of appellant, respondent was damaged in the sum of $30.25, the value of the laundry parcel, and

in the further sum of $1,000. The prayer for judgment was for the total of these two amounts.

The trial court found with respondent on the allegations of the complaint, with some exceptions, one of which is below noted, and found that she was entitled to exemplary damages and that the total of the actual and exemplary damages suffered by her was $300. The judgment was for that amount, with costs.

It is contended by appellant, among other things, that the evidence is insufficient to support the findings of the trial court upon which were based the judgment for exemplary damages. Such damages can be allowed only where a defendant has been guilty of oppression, fraud, or malice (Civ. Code, sec. 3294). Here, although the complaint alleged that the acts of the appellant were maliciously done, the court declined to so find. There is no fraud in the case and, in order to justify the judgment, it must therefore appear that the appellant acted oppressively.

[1] There was some conflict in the evidence bearing upon the question whether appellant was responsible for the loss of the laundry parcel and the finding of the trial court was with him upon the question of the amount of the damage suffered by respondent because of the loss. The parties were at loggerheads over these points for some time and, when it appeared finally that the parcel was gone beyond recovery, respondent took the matter into her own hands and mailed to appellant her checks for rent, deducting the value she placed on the lost apparel, an amount three times as great as that fixed by the court as her damage in that regard. The note accompanying the checks was not an offer of settlement, as it is styled in the findings. It closed with a demand for a receipt in full and, under all the circumstances shown by the record, appellant justly regarded it as a refusal to pay more than the amount of the checks, a larger sum being then due him. The rent was past due and appellant, upon the receipt of respondent's ultimatum, had the right to terminate her tenancy. The findings of the trial court are to the effect that the relation of landlord and tenant existed between the parties, and respondent was therefore entitled to the notice provided by law for the termination of her holding. This notice was not given, but appellant has insisted, from his answer to his

final brief on this appeal, that the relationship did not exist and there is evidence in the record from which the trial court might have found with him on the issue. At any rate, we are satisfied that the defense presented by appellant on the point was made in good faith, and there is nothing in the record from which the trial court could have entertained a contrary view. That being so, appellant's course in attempting to end respondent's occupancy by merely changing the lock on the door was not oppressive. It is generally known that resort is often had to such a course by landlords who evidently deem it justified in order to protect the lien provided by either section 1861 or section 1861a of the Civil Code, both of which give to the lienholder the right to the possession of personal belongings of guests. It is to be remarked that the appellant contends that he was entitled to a lien on respondent's personal property contained in her apartment and that he had the right to change the lock on her door in order to protect his lien.

The complaint alleges that, after closing the apartment, appellant advised friends of respondent who came to see her that the apartment had been closed and that respondent was no longer living at the hotel; while the court found that appellant told respondent's friends that the apartment had been closed and that there had been some trouble between the management and respondent. These statements of the complaint and of the findings do not fit together, but if appellant had made any or all of the statements mentioned no charge of oppression could be predicated of that fact, as he would have stated but the truth. The apartment had been closed, the respondent no longer lived at the hotel, and there had been trouble between her and the management. Further, and to end the matter, none of these statements was made to the friends of respondent either by appellant or by his agents. The record is searched in vain for them.

It is alleged in the complaint and found by the court that appellant closed respondent's apartment without returning to her the two checks she had mailed with her letter asking for receipts in full. We can see no evidence of oppression in this fact. The checks were returned to the counsel for respondent early in September, and we cannot see that the

conduct of appellant in this regard could be said to be oppressive if they were never returned.

It was also alleged and found that the acts of appellant were committed with intent to compel respondent to pay to him a sum not due. We can find nothing in the evidence to support such a finding.

[2] We are satisfied, on the whole, that the evidence fails to justify the findings upon which the judgment for exemplary damages was based. We are now confronted with the question whether the judgment may be modified or whether it must be reversed. The trial court finds two items of special damage amounting to $14. There is, however, some slight evidence in the record from which the court may have determined that respondent was entitled to general compensatory damages. We cannot say how much of the judgment over and above $14, if any, was intended as compensatory damages and how much as exemplary damages.

The judgment is reversed.

Finlayson, P. J., and Craig, J., concurred.